**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **LEN BER, M.D., BEATRICE MCLAUGHLIN, DEBORAH MAHANGER, L.M., CATHERINE THOMPSEN, JOSEPH P. BRADY, MAYRA BERMUDEZ,** and **TARGETED JUSTICE, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**CENTERS FOR DISEASE CONTROL AND PREVENTION; NATIONAL INSTITUTE OF HEALTH**; and **JAY BHATTACHARYA, M.D.,** in his official capacity as **DIRECTOR** of the **NATIONAL INSTITUTE of HEALTH** and **ACTING DIRECTOR** of the **CENTERS FOR DISEASE CONTROL AND PREVENTION,**<br><br>Defendants. | CASE NO.:<br><br><br>ADMINISTRATIVE PROCEDURE ACT |

**COMPLAINT**

TO THE HONORABLE COURT:

NOW COME the Plaintiffs, LEONID "LEN" BER, M.D., BEATRICE MCLAUGHLIN, DEBORAH MAHANGER, LILLY MAHANGER, CATHERINE THOMPSEN, JOSEPH P. BRADY, MAYRA BERMUDEZ, and TARGETED JUSTICE, INC., through their undersigned counsel, and respectfully allege and pray:

**I. INTRODUCTION**

1. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, the Public Health Service Act and 28 U.S. Code § 1361. Plaintiffs seek to compel the Centers for Disease Control and Prevention ("CDC") and the National

Institute of Health ("NIH")—including Defendant Jay Bhattacharya, Director of Defendant NIH and Acting Director of Defendant CDC—to fulfill their mandatory statutory duties to recognize, surveil, issue diagnostic guidance for, and provide equal access to research and care for civilians suffering from Anomalous Health Incidents ("AHI"), also known as "Havana Syndrome."

2. Despite clear evidence of diagnosed civilian cases mirroring those of federal employees (for whom Defendants have issued detailed diagnostic, treatment, and compensation guidance), Defendants have unlawfully withheld agency action, engaged in dereliction of duty, and discriminatorily denied civilians the same protections afforded to federal employees and their families.

3. This failure violates the APA and the statutory mandates under the Public Health Service Act (42 U.S.C. §§ 241, 242, 243, 247b, 281–284).

4. On September 29, 2025, Plaintiff Len Ber, M.D., on behalf of Plaintiff Targeted Justice, Inc., formally petitioned both defendant agencies for immediate administrative agency action including the issuance of detailed diagnostic and treatment guidance for civilian victims of AHI and/or Havana Syndrome. Both petitions are included as **Exhibits A** [CDC Petition] and **B** [NIH Petition].

5. Defendants ignored the petitions, did not issue any acknowledgment or response, and did not take the requested administrative action.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question),  U.S.C. § 1346 (United States as defendant), and 5 U.S.C. §§ 701–706 (Administrative Procedure Act).

7. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because one of the plaintiffs, Beatrice McLaughlin, resides in Pinellas County and a substantial part of the events or omissions giving rise to the claims to this complaint occurred within this District.

## III. PARTIES

## A. Plaintiffs

8. All individual plaintiffs and most of Targeted Justice members have experienced sudden onset of symptoms attributed to Havana Syndrome such as head pressure, dizziness, tinnitus, cognitive issues, loud directional noise, buffeting, and symptoms associated with Anomalous Health Incidents ("AHI") and/or Havana Syndrome. None of the Plaintiffs are U.S. government employees or related to government employees.

9. Plaintiff Len Ber, M.D., is a physician and Medical Director of Targeted Justice, Inc. In 2020, he was diagnosed with Havana Syndrome by Dr. Michael Hoffer, the physician who has diagnosed federal government employees for whom the Department of Defense ("DOD") and CDC have issued Havana Syndrome diagnostic and treatment guidance. Plaintiff Ber is a resident of Bloomingdale, Illinois and has no affiliation with the U.S. Government. Dr. James Giordano of Georgetown University confirmed his diagnosis.

10. Plaintiff Beatrice McLaughlin, of legal age, is a civilian resident of Pinellas County, Florida. In 2024, Plaintiff McLaughlin sought diagnosis and treatment for Havana Syndrome with Dr. Hoffer, who declined to accept her as a patient, stating that he only diagnoses government employees.

11. Plaintiffs Deborah and L.M. were both diagnosed by Dr. Hoffer as suffering from Havana Syndrome/AHI. Deborah and L.M, a minor, live in Palm Beach County, Florida. Deborah is L.M's mother. Dr. Hoffer diagnosed them because Deborah is a former Federal Bureau of Investigation employee.

12. In 2024, Plaintiff Mayra Bermudez, a resident of Texas, sought to be evaluated by Dr. Hoffer for Havana Syndrome. After asking her if she was a government employee, Dr. Hoffer's office declined to evaluate her, replying that "Dr. Hoffer specializes in certain cases and will not be able to assist with your request."

13. Plaintiff Catherine Thompsen is a civilian resident of Ohio. In 2022, she was evaluated by Dr. Michael Hoffer, who expressed to her that she may be suffering from an Anomalous Health Incident, but he refused to provide her with a formal diagnosis.

14. Plaintiff Joseph P. Brady, a resident of California and Ohio, retired from the Armed Forces, was evaluated and/or diagnosed with AHI/Havana Syndrome by Dr. Hoffer. Mr. Brady used to work for the U.S. Government.

15. Targeted Justice, Inc., is a Texas 501(c)(3) non-profit human rights organization dedicated to representing thousands of undiagnosed or unrecognized AHI/Havana Syndrome civilian patients throughout the United States. It has established a Civilian Havana Syndrome/AHI Registry documenting dozens of diagnosed civilian cases. All individual plaintiffs are members of Targeted Justice, Inc.

**B. Defendants**

16. Defendant Centers for Disease Control and Prevention ("CDC") is a federal agency within the U.S. Department of Health and Human Services responsible for public health surveillance, issuance of diagnostic guidance, and coordination of responses to

4

emerging health threats.

17.    Defendant National Institute of Health is a federal agency responsible for biomedical research, clinical studies, and inclusion of affected populations in research protocols for conditions such as AHI.

18. Defendant Jay Bhattacharya, M.D., is sued in his official capacity as Director of NIH and Acting Director of CDC. He is responsible for the agencies' policies and actions at issue.

## IV. FACTUAL ALLEGATIONS

19. AHI/Havana Syndrome is a medical condition characterized by sudden-onset auditory/vestibular phenomena followed by neurological deficits (vertigo, cognitive impairment, balance dysfunction, traumatic encephalopathy). The 2020 National Academies of Sciences, Engineering, and Medicine ("NASEM") report and 2022 Intelligence Community Experts' Panel stated that AHI represents a novel and unique neurosensory syndrome with unique combination of core characteristics that cannot be explained by known environmental or medical conditions.

20.    Federal government employees and their families have received comprehensive diagnostic guidance, treatment access, and compensation protocols for Anomalous Health Incidents/Havana Syndrome. Specifically:

A. The Department of Labor's Office of Workers' Compensation Programs issued FECA Bulletin No. 22-03 (January 12, 2022), titled "Processing Claims for Anomalous Health Incidents (AHI) under the Federal Employees' Compensation Act." That bulletin states, in relevant part: "Once the factual component of the claim has been established and the employee has been diagnosed with a traumatic brain injury, a fully rationalized medical opinion as to causal relationship is not needed. The physician's diagnosis and an affirmative statement are sufficient to accept the claim." It treats AHIs as traumatic brain injuries and streamlines medical evaluation and compensation.

B. DOD has issued guidance and established treatment protocols under the National Defense Authorization Acts (FY 2022 § 732 and FY 2023 § 1044), providing military treatment facility access, registry inclusion, and specialized care (e.g., at the National Intrepid Center of Excellence) exclusively for covered federal employees and dependents.

21. In contrast, civilians—including the four individual plaintiffs diagnosed by Dr. Hoffer as well as the three plaintiffs whom he refused to diagnose—have received no equivalent CDC or NIH diagnostic guidance, surveillance system, reporting mechanism, or research inclusion. Dr. Hoffer explicitly stated to at Plaintiff McLaughlin that he is "not allowed to diagnose Havana Syndrome victims any longer" due to government restrictions that exclude civilians.

22. Dr. Hoffer's diagnoses of four of the Plaintiffs were made using neurological and vestibular testing consistent with federal protocols used to diagnose government employees.

23. On September 29, 2025, Plaintiff Ber, on his behalf and that of Targeted Justice, Inc., submitted detailed petitions to both defendant agencies via certified mail (attached hereto as **Exhibits A** [CDC Petition] and **B** [NIH Petition]).

24. The CDC petition requested specific agency action, including: a) formal recognition of AHI/Havana Syndrome as a reportable condition among the U.S. Population, b) national surveillance, c) publication of diagnostic guidance mirroring the 2019 CDC internal case definition, 2022 Department of Labor (DOL) Federal Employees' Compensation Act (FECA) Bulletin 22-03, 2025 DOD AHI Clinical Guidance, Health Alert Network (HAN) alerts, and d) parity of access to NIH programs. See **Exhibit A**.

25. The NIH petition requested: a) research inclusion of civilians, b)

retraction/review of tainted studies, and c) civilian access to clinical protocols. See **Exhibit B**.

26. Defendants have ignored altogether the petitions. No acknowledgment of receipt, no substantive response, no issuance of diagnostic guidance, and no action has been issued as of the date of this filing—more than seven months later. The agencies' conduct constitutes unlawful withholding of agency action under 5 U.S.C. § 706(1).

27. The CDC's own Freedom of Information Act responses sent to Plaintiff Ber (referenced in the petitions) admit it possesses—but has withheld under deliberative-process privilege—an internal "Anomalous Health Incidents (AHI) Guidance." This concealment further demonstrates arbitrary and capricious inaction.

28. Plaintiffs and Targeted Justice members have suffered and continue to suffer concrete, particularized harm traceable to Defendants' dereliction of duty. Without diagnostic guidance and surveillance, civilians cannot obtain proper medical care, report cases, or access research or treatment.

29. This creates a two-tiered system that discriminatorily disadvantages civilian, non-federal-government employees.

30. Specifically, Plaintiffs Ber, Mahanger (Deborah and L.M.), and Brady suffer harm as a result of Defendant's failure to include them in national rosters and allow them to obtain and qualify for treatment and NIH programs available to government employees.

31. Plaintiffs McLaughlin, Thompsen, and Bermudez suffer the complete range of harm due to Defendants' conduct since they have the full scope of AHI?Havana Syndrome symptoms and have been denied:  a) formal recognition of AHI/Havana Syndrome as a reportable condition, b) national surveillance, c) publication of diagnostic

guidance mirroring the 2019 CDC internal case definition, 2022 CDC AHI Guidance, and Department of Labor (DOL) Federal Employees' Compensation Act (FECA) Bulletin 22-03, Health Alert Network (HAN) alerts, and d) parity of access to NIH programs.

32. As set forth below, Plaintiffs' claims meet all the reasonableness factors set forth in *Telecommunications Research & Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).

33. APA § 706(1) imposes on Defendant CDC a discrete, required duty to issue diagnostic/surveillance guidance for emerging public health conditions affecting U.S. persons. This obligation is rooted in the CDC's organic authority under the Public Health Service Act, 42 U.S.C. §§ 241 et seq., and general obligations under 5 U.S.C. § 555(b) to conclude matters "within a reasonable time."

34. In spite of this, the agency has failed to act despite requests and known risks.

35. The delay is unreasonable under the six *TRAC* factors set forth below.

*TRAC* **Factor One**

36. **There is no rational timeline or process to generate the guidance, and the agency's delay exceeds typical periods for similar guidance.** The agencies' nearly decade-long delay in issuing **civilian** diagnostic guidance violates the "Rule of Reason."

37. The agencies' prolonged failure to issue diagnostic guidance, a case definition, or clinical protocols for civilians suffering from Anomalous Health Incidents (AHIs, commonly known as Havana Syndrome), which have been <u>available since at least 2019</u> relating to the symptoms first documented in 2016, falls far outside any reasonable timeframe. Symptoms of Havana Syndrome were first reported by U.S. government

personnel in late 2016 in Havana, Cuba. Congress responded in 2021 by enacting the Helping American Victims Afflicted by Neurological Attacks Act of 2021 (HAVANA Act), Pub. L. No. 117-46, which expressly covers qualifying brain injuries occurring "on or after January 1, 2016." The statute's retroactive scope and urgent title reflect congressional recognition that **these neurological injuries demand prompt attention and standardized medical responses**.

38. Despite this, as of June 2026—nearly ten years after the first documented cases and nearly five years after the HAVANA Act—civilian victims have no official CDC or NIH diagnostic guidance, case definition, reporting pathway, or clinician protocols. This delay is unreasonable under any measure.

39. Civilian cases of physician-diagnosed AHIs/Havana Syndrome on U.S. soil continue to mount. Affected civilians suffer progressive neurocognitive symptoms—including headaches, vertigo, cognitive deficits, and balance disorders—without standardized diagnostic tools or federal recognition that would facilitate treatment, insurance coverage, disability options, or public health tracking.

### *TRAC* Factor Two

40. The second *TRAC* factor directs courts to consider *"where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason."* *TRAC, supra,* 750 F.2d at 80.

41. In this context, Congress provided a clear indication of the speed with which It expects the agency to proceed as it pertains to **government employees** thought to be the only victims of this condition. Here, Congress supplied precisely such an indication

through the Helping American Victims Afflicted by Neurological Attacks Act of 2021 (the "HAVANA Act"), Pub. L. No. 117-46, 135 Stat. 391 (Oct. 8, 2021), which expressly recognizes the urgent, time-sensitive nature of addressing brain injuries suffered by U.S. government personnel from Anomalous Health Incidents.

42. By its very title and structure, the HAVANA Act reflects Congress's unmistakable intent that affected individuals receive swift relief and that agencies act expeditiously to implement compensatory and supportive measures.

43. The statute is not a routine authorization; it is a targeted legislative response to a specific, ongoing crisis involving neurological attacks on American public servants. Congress deliberately expanded eligibility for payments to cover qualifying brain injuries occurring "before, on, or after" enactment and imposed short regulatory deadlines (e.g., 180 days for prescribed regulations), underscoring the need for prompt agency action.

### *TRAC* Factor Three

44. Under *TRAC* Factor Three, the defendant agencies' delay in issuing guidance for the diagnosis of Anomalous Health Incidents in civilians is particularly intolerable because human health and welfare—specifically, irreparable neurological harm—are directly at stake.

45. The third *TRAC* factor recognizes that *"delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." TRAC, supra,* 750 F.2d at 80. This factor weighs heavily in favor of judicial intervention where agency inaction risks or prolongs serious, ongoing harm to individuals' physical and neurological well-being.

46. Here, the agencies' nearly decade-long failure to issue civilian diagnostic guidance, a standardized case definition, or clinician protocols for Anomalous Health Incidents (AHIs/Havana Syndrome) has directly exacerbated irreparable neurological harm to American civilians. Symptoms first documented in 2016 have proven debilitating and often chronic for affected individuals. Many victims, such as individual Plaintiffs and Targeted Justice members, suffer progressive or long-term impairment that limits their ability to work, drive, or maintain basic daily functioning, with no clear path to coordinated federal medical recognition or care.

47. As of January 2026, the independent Civilian Registry for Diagnosed Havana Syndrome Patients documents at least fourteen verified physician-diagnosed cases supported by medical records, along with thirty-nine additional self-reported physician diagnoses. New incidents and ongoing attacks have been reported into 2025 and 2026, including recurring episodes of acute pain and neurological disruption. Three out of the fourteen physician-diagnosed cases were reported to the CDC via a State Health Epidemiologist. Only one received a response from the State/CDC, in which the signal was essentially ignored because the patient was not in the military.

48. Without official diagnostic guidance from the CDC or NIH, civilians face delayed or denied diagnoses, fragmented care, insurance obstacles, and the absence of any federal surveillance or reporting system—leaving them to suffer in isolation while their conditions worsen.

49. The harm is not speculative or temporary; it is irreparable neurological injury to brain networks affecting vestibular, cognitive, and sensory systems. Delaying standardized guidance for civilians in the face of these documented, ongoing incidents

and the mounting toll on civilian victims is precisely the type of delay that courts find least tolerable under *TRAC* Factor Three. **The agencies' inaction directly prejudices human health and welfare, compelling the conclusion that the delay is unreasonable and warrants judicial relief.**

### *TRAC* Factor Four

50. Under *TRAC* Factor Four, expediting civilian diagnostic guidance would impose NO significant burden on agency activities of higher or competing priority. The court has to "*consider the effect of expediting delayed action on agency activities of a higher or competing priority.*" *TRAC*, *supra*, 750 F.2d at 80.

51. This factor strongly favors relief because the relief sought—issuance of civilian diagnostic guidance, a standardized case definition, and clinician protocols for Anomalous Health Incidents (AHIs/Havana Syndrome)—would place virtually **no burden** on the agencies' higher-priority activities.

52. The CDC, NIH, and other relevant agencies have already developed and implemented comprehensive clinical tools, assessment protocols, and guidance specifically for U.S. government employees and their family members affected by the same condition since the first cases emerged in 2016. These include the Department of State's HABIT ("Havana Acquired Brain Injury Tool") screening protocol, the Defense Health Agency's Form 244 Acute Assessment tool, internal AHI patient registries, treatment pathways through Intrepid Spirit Centers, and related clinical guidance documents, and 2022 FOIA-released "CDC AHI Guidance" whose content was completely redacted.

53. Since the agencies have already invested the substantial time and expertise

required to create these materials for government personnel, extending or adapting them to the civilian context requires only marginal additional effort—primarily repackaging and disseminating existing knowledge to public and private clinicians. No new large-scale research, data collection, or resource-intensive studies are necessary; the agencies already possess guidance for the government-employee cohort.

54. Granting the relief requested in this action would therefore not divert resources from any competing priority of higher importance. Instead, it would represent a simple, low-cost extension of work the agencies have already completed and are actively maintaining for federal employees. Under *TRAC* Factor Four, this minimal burden weighs decisively in favor of compelling prompt agency action to address the parallel and growing needs of affected American civilians.

### *TRAC* Factor Five

55. Plaintiffs' claims meet *TRAC* Factor Five, because unreasonable agency delay and inaction have caused, and continue to cause, significant, concrete harm to individual Plaintiffs' and Targeted Justice members' health, livelihood, and ability to obtain necessary medical care.

56. The agencies' nearly ten-year delay in issuing civilian diagnostic guidance, a standardized case definition, and clinician protocols for Anomalous Health Incidents (AHIs/Havana Syndrome) has inflicted profound and ongoing prejudice on Plaintiffs and the membership of Targeted Justice. Symptoms continue to devastate civilian victims, producing permanent neurological damage and disability, including vestibular dysfunction, cognitive impairment, chronic headaches, balance disorders, tinnitus, and sensory abnormalities.

57. Without official CDC or NIH recognition or guidance, civilians face systemic barriers: physicians routinely dismiss or misdiagnose their conditions, insurance providers deny coverage, employers question the legitimacy of their impairments, and patients are left without coordinated care or treatment pathways. The prejudice is both individual and widespread.

58. This is particularly harmful for the developing brain of minor L.M.

59. As of 2026, independent registries document at least fourteen verified physician-diagnosed civilian cases with supporting medical records, plus dozens of additional confirmed diagnoses. Many victims have been forced to leave their jobs, incur catastrophic medical expenses, and suffer progressive deterioration because no federal diagnostic framework exists to validate their injuries or guide treatment.

60. The absence of guidance also prevents meaningful public health surveillance, leaving new incidents undetected and unaddressed on U.S. soil.

61. **Plaintiffs' and Targeted Justice members' prejudiced interests are not abstract or minor—they involve irreversible brain injuries to private U.S. citizens and legal residents who have received no support equivalent to that already extended to U.S. government employees for the exact same condition.**

62. This delay has transformed Plaintiffs' and Targeted Justice members' already devastating neurological injuries into a prolonged ordeal of medical gaslighting, misdiagnoses, financial ruin, and isolation. Under *TRAC* Factor Five, the severe and continuing nature of this prejudice strongly supports a finding that the agencies' inaction is unreasonable and demands judicial intervention.

### *TRAC* Factor Six

63. Under *TRAC* Factor Six, *"the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'"* *Id.*

64. The nature of defendant agencies' nearly ten-year failure to issue civilian diagnostic guidance, a standardized case definition, or clinician protocols for Anomalous Health Incidents (AHIs/Havana Syndrome) is objectively unreasonable regardless of whether any improper motive exists and harms plaintiffs. Since symptoms were first documented in 2016 and Congress enacted the HAVANA Act in 2021 expressly covering injuries "on or after January 1, 2016," the agencies have had ample time, data, and internal expertise—developed through extensive work on government-employee cases—to extend basic diagnostic tools to the civilian population.

65. The continued absence of publicly-faced CDC or NIH guidance, despite ongoing civilian cases and documented neurological harm, stands on its own as compelling evidence of unreasonable delay.

## V. CLAIMS FOR RELIEF

### COUNT I – APA – UNLAWFULLY WITHHELD AGENCY ACTION (5 U.S.C. § 706(1))

66. Paragraphs 1-65 are hereby incorporated by reference.

67. Defendants have a clear, non-discretionary duty under the Public Health Service Act (42 U.S.C. §§ 241, 243, 247b) and implementing regulations to conduct surveillance of emerging health threats, issue diagnostic guidance and case definitions, and coordinate public health responses.

68. 5 U.S.C. § 706(1) of the APA requires courts to "compel agency action

unlawfully withheld or unreasonably delayed."

69. Pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) of the APA, Plaintiffs request that the Court ORDER defendants to issue diagnostic guidance and case definitions for civilians suffering from AHI/Havana Syndrome, and coordinate public health responses without further delay.

## COUNT II – APA – ARBITRARY, CAPRICIOUS, AND ABUSE OF DISCRETION (5 U.S.C. § 706(2))

70. Paragraphs 1-69 are hereby incorporated by reference.

71. Defendants' inaction is arbitrary and capricious in violation of 5 U.S.C. § 706(2) because it ignores substantial evidence of civilian cases, withholds guidance already developed internally and issued by sister agencies (DOL/DOD), and treats identical diagnoses differently based solely on federal employment status.

72. Plaintiffs request that under 28 U.S.C. § 1361, the Court enter an ORDER against all defendants to issue diagnostic and surveillance guidance and case definitions for AHI/Havana Syndrome in the civilian population, evaluated for reasonableness under the *TRAC* factors from Defendants' complete failure to act on the September 29, 2025, petitions and on the documented civilian AHI cases that violate this mandate.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. DECLARE that Defendants' failure to act violates the APA, 5 U.S.C. § 706(1) and (2) as well as under 28 U.S. Code § 1361 compelling Defendants to:

1. Formally recognize AHI/Havana Syndrome as a reportable condition for civilians;

2. Issue and publicly disseminate official AHI/Havana Syndrome diagnostic

16

guidance for physicians identical or substantially similar to the DOD/DOL guidance described herein;

3. Establish a national civilian AHI surveillance and reporting system;

4. Provide civilians equal access to NIH research protocols and treatment programs; and

5. Issue Health Alert Network bulletins and training for public health officials.

B. AWARD Plaintiff its reasonable costs pursuant to 28 U.S.C. § 2412(a) and its reasonable attorney's fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in an amount to be determined by the Court upon Plaintiffs' timely application following entry of final judgment, together with any supplemental fees and costs incurred in litigating the fee application itself.

Respectfully submitted,

**DATE**: June 23, 2026

*/s/ Ana L. Toledo*
Ana L. Toledo, Esq. 2830 Arizona Ave., N.W.
Washington, D.C. 20016
Tel. 832-247-3046 and
281-772-7668
Email: ana@anatoledo.com
Counsel for Plaintiffs

## Corporate Disclosure Statement

Pursuant to Federal Rule of Civil Procedure 7.1(a)(1) and pursuant to Federal Rule of Civil Procedure 7.1(a)(1), the undersigned counsel of record certifies on behalf of Plaintiff/Defendant Targeted Justice as follows:

Targeted Justice is a nongovernmental corporation. Targeted Justice has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Targeted Justice does not own shares or have any ownership interest in any other corporation, publicly held or otherwise.

**DATE**: June 23, 2026

Respectfully submitted,

_/s/ Ana L. Toledo_
Ana L. Toledo, Esq.
2830 Arizona Ave., N.W.
Washington, D.C. 20016
Tel. 832-247-3046 and
281-772-7668
Email: ana@anatoledo.com
Counsel for Plaintiffs